UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BATIR NAZAROV, individually and on behalf of all others similarly situated,

                      Plaintiffs,

-against-

NYC WHEELS CAR SERVICE, INC, and ARSEN AVAKYAN,

                      Defendants.
------------------------------------------------------------------X

Case No.:
1:16-cv-7117 (SLT) (PK)

**DEFENDANTS' LOCAL CIVIL RULE 56.1 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

      Defendants, NYC Wheels Car Service, Inc. (hereinafter "NYC" or the "Corporate Defendant") and Arsen Avakyan (hereinafter "Avakyan" or the "Individual Defendant") (collectively hereinafter the "Defendants"), by their attorneys, Milman Labuda Law Group PLLC, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rules 7.1 and 56.1 of the Local Rules for the Eastern District of New York, hereby respectfully submit this Rule 56.1 Statement of Material Facts in Support of their Motion for Summary Judgment (hereinafter "SMF"), as to which Defendants contend there are no genuine issue to be tried.

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF**

**Defendants NYC Wheels Car Service, Inc. and Arsen Avakyan**

1. NYC Wheels Car Service, Inc. ("NYC") is a domestic business corporation formed under the laws of the State of New York and is authorized to do business in the State of New York. Avakyan Aff.[1] ¶ X, Ex. A; Avakyan Dep.[2] 15:8-13; D70-D74.

---

[1] All references to "Avakyan Aff." refer to the Affidavit of Arsen Avakyan in support of Defendants' motion for summary judgment.

[2] All references to "Avakyan Dep." refer to the deposition transcript of Arsen Avakyan, the excerpted portions of which are annexed to the Declaration of Emanuel Kataev, Esq. in Support (hereinafter "Kataev Decl." as **Exhibit "E."**

2. NYC is located at 1702 Avenue Z, Brooklyn, NY.  Avakyan Dep. 17:14-17.

3. NYC maintains a "for-hire vehicle base" license with the New York City Taxi & Limousine Commission (hereinafter "TLC") which entitles it to operate a taxi service in New York City.  D59[3]; Avakyan Aff. ¶ X.

4. NYC is regulated by the TLC.  Avakyan Aff. ¶ X.

5. The TLC regulations require each black car to be affiliated with a base (such as NYC), but can lawfully be affiliated with only one base a time.  Avakyan Aff. ¶ X.

6. The TLC regulations require drivers that perform services for NYC to have TLC licenses and abide by the TLC rules and regulations.  Avakyan Aff. ¶ X.

7. Avakyan is a general manager at NYC and has served in this capacity since NYC began operating.  Avakyan Dep. 15:2-7.

8. Avakyan does not own NYC.  Avakyan Dep. 15:14-24.

9. Non-party JND Trans Inc. (hereinafter "JND") is a domestic business corporation formed under the laws of the State of New York and is authorized to do business in the State of New York.  Avakyan Aff. ¶ X, Ex. B.

10. JND is located at 4311 16th Avenue.  Avakyan Dep. 17:23-18:3.

11. Avakyan owns JND.  Avakyan Dep. 13:13-17, 15:5-7, 20:18-24.

12. JND provides for-hire vehicles for rent to the drivers that choose to work or engage with NYC as well as other bases, such as Uber, Lyft, and other private livery bases registered with the TLC.  Avakyan Dep. 13:18-14:2, 38:5-10.

13. JND owns vehicles that it leases or rents to drivers.  Avakyan Dep. 18:8-15.

---

[3] All references to "D#" or "D##" refer to documents produced by Defendants in the course of discovery, the excerpted portions of which are annexed to the Declaration of Emanuel Kataev, Esq. in Support.  See Kataev Decl. ¶ X, Ex. D.

14. JND also leases vehicles which it rents to drivers. Id.

15. JND also provides vehicles to be used by various TLC bases, such as NYC. Avakyan Dep. 20:25-21:7.

16. Any driver who is interested in renting a vehicle from JND meets with Avakyan, reviews and signs a contract, obtains a vehicle, and is free to work wherever he or she pleases so long as weekly rent for the vehicle is paid. Avakyan Dep. 21:8-16, 39:8-11.

17. When drivers rent vehicles from JND, they are offered the opportunity to provide driving services for NYC. Avakyan Dep. 38:15-39:7.

18. When a driver that provides services for NYC picks up a fare offered by NYC, payment is processed by NYC. Avakyan Aff. ¶ X.

19. Drivers that perform services for NYC are paid commissions totaling eighty percent (80%) of the fares less other payments such as weekly rent and parking tickets incurred by drivers that perform services for NYC that are issued to JND as the cars are registered to JND. Avakyan Aff. ¶ X.

20. When a driver that performs services for NYC picks up his own client, i.e., one that is not obtained through NYC, the driver may process the fare through whatever method he chooses, i.e., cash, credit card merchant service account, etc., and the driver is not required to pay NYC any commission. Avakyan Aff. ¶ X.

21. The amount of rent for a vehicle varies by the make, model, and other characteristics of a vehicle such as whether the vehicle is four, six, or eight cylinders and whether the vehicle is a hybrid, but typically ranges from $300.00 to $350.00 per week. Avakyan Dep. 39:12-16, 40:8-12.

22. Drivers that perform services for NYC are not required to drive exclusively for NYC. Rather, they can and do drive for other unrelated, competitor black car companies, including but not limited to Uber.  Avakyan Aff. ¶ X.

23. Drivers that perform services for NYC do work for other black car companies using the same cars they own or rent and use to perform services for NYC.  Avakyan Aff. ¶ X.

24. Some drivers that perform services for NYC have picked up private street hails without going through any dispatch system despite the fact that this is against TLC regulations.  Avakyan Aff. ¶ X.

25. Drivers that perform services for NYC are not required to disclose to Defendants the identity of the other black car companies for which they drive.  Avakyan Aff. ¶ X.

26. NYC does not perform a background check for criminal history or outstanding TLC violations.  Avakyan Aff. ¶ X.

27. The TLC does this before issuing its license.  Avakyan Aff. ¶ X.

28. Drivers that perform services for NYC are not required to personally perform driving services, and may delegate driving services to other individuals so long as they have a valid TLC license.  Avakyan Aff. ¶ X.

29. Each driver that performs services for NYC operates and runs his own business.  Avakyan Aff. ¶ X.

30. Drivers are free to incorporate their businesses.  Avakyan Aff. ¶ X.

31. Drivers that perform services for NYC could and do rent their vehicles to others to provide ground transportation services on their behalf.  Avakyan Aff. ¶ X.

32. Drivers that perform services for NYC are not guaranteed a certain amount of work from NYC.  Avakyan Aff. ¶ X.

33. Drivers that perform services for NYC have no fixed schedule and decide for themselves when and where to provide ground transportation services.  Avakyan Aff. ¶ X.

34. Drivers that perform services for NYC can cease providing services whenever they wanted. Avakyan Aff. ¶ X.

35. Some drivers that provide services for NYC elect to abstain from providing driving services for extended periods of time.  Avakyan Aff. ¶ X.

36. Drivers that perform services for NYC are not required to tell Defendants if they are going to refrain from providing driving services for a period of time.  Avakyan Aff. ¶ X.

37. Drivers that perform services for NYC who cease providing driving services are able to resume providing driving services whenever they want without penalty of any kind.  Avakyan Aff. ¶ X.

38. Some drivers that perform services for NYC have taken months off from performing services for NYC and then returned to performing services for NYC.  Avakyan Aff. ¶ X.

**NYC's Operation and its Relationship with Drivers that Perform Services for It**

39. NYC provides for-hire vehicle service to its customers; that is, taxi service or curbside service.  Avakyan Dep. 32:9-17, 58:3-11.

40. Drivers that perform services for NYC are engaged in common carrier transportation, which is private automobile transportation service.  Avakyan Aff. ¶ X.

41. Drivers that perform services for NYC typically operate small motor vehicles.  Avakyan Aff. ¶ X.

42. In these small motor vehicles, drivers that perform services for NYC transport persons and such property as they may carry with them to any requested destination in the community. Avakyan Aff. ¶ X.

43. Drivers that perform services for NYC provide transportation services on demand to a variety of customers.  Avakyan Aff. ¶ X.

44. Drivers that perform services for NYC do not drive fixed routes.  Avakyan Aff. ¶ X.

45. NYC does not dictate the routes drivers take to transport customers.  Avakyan Aff. ¶ X.

46. Drivers that perform services for NYC predominantly drive in the five (5) boroughs of New York City as well as Nassau and Suffolk County.  Avakyan Aff. ¶ X.

47. Individuals may call NYC and ask for a car based on availability. Avakyan Dep. 32:18-24, 33:22-34:4, 51:9-24.

48. NYC also has a contract with the New York State Department of Health ("NYSDOH") to provide driving services to patients.  Avakyan Dep. 34:5-9.

49. NYC does not have an exclusive contract with the NYSDOH.  Avakyan Aff. ¶ X.

50. Passengers that are served through the NYSDOH are transported locally between hospitals, doctors' offices, medical offices, and their homes. Avakyan Dep. 34:10-13.

51. Passengers that are served through the NYSDOH pay their fares through their insurance policies, which the NYSDOH pays. Avakyan Dep. 34:14-24.

52. Passengers who need a vehicle to transport them from their home to a hospital, doctor's office, or medical office contact the New York State Department of Health, and the DOH contacts NYC by way of manifest sent via facsimile. Avakyan Dep. 36:12-37:2.

53. NYC also provides services to various managed long-term care ("MLTC") plans by transporting patients from their homes to hospitals, doctor's offices, medical offices, and other medical facilities within the five boroughs of New York City, for which the MLTCs pay. Avakyan Dep. 35:12-24.

54. Drivers that perform services for NYC make investments in their vehicles. Avakyan Aff. ¶ X.

55. Drivers that perform services for NYC purchase or rent cars from other drivers and unrelated third parties. Avakyan Aff. ¶ X.

56. Drivers that perform services for NYC decide whether they want to own the vehicle in which they provided services for NYC. Avakyan Aff. ¶ X.

57. Some drivers purchase their vehicles, while others rent them, either from JND or elsewhere. Avakyan Aff. ¶ X.

58. Drivers that perform services for NYC are responsible for the maintenance of their own vehicles including regular oil changes, brakes, tune-ups, and car washes. Avakyan Aff. ¶ X.

59. NYC has no rules against drivers using their cars for personal purposes and do not require any signage on the drivers' vehicles. Avakyan Aff. ¶ X.

60. Drivers that perform services for NYC are permitted to place signs for other black car companies on their cars. Avakyan Aff. ¶ X.

61. The customer, whether an individual passenger, NYSDOH, or MLTC, determines the time of the trip. Avakyan Aff. ¶ X.

62. The customer, whether an individual passenger, NYSDOH, or MLTC, determines the destination of the trip. Avakyan Aff. ¶ X.

63. Drivers that perform services for NYC typically only carry one (1) fare at a time. Avakyan Aff. ¶ X.

64. Rates for car service vary depending on mileage, time of day, geographic location of the pick-up and drop off destinations, and type of vehicle requested. Avakyan Dep. 32:25-33:21, 37:12-15.

65. A GPS program calculates the miles for each fare.  Avakyan Dep. 37:16-23.

66. NYC does not provide nor pay for cellular phones to drivers that perform services for NYC.  Avakyan Dep. 31:11-16.

67. NYC does not provide drivers with anything in order to be able to perform services.  Avakyan Dep. 70:6-12.

68. NYC does not provide drivers with handbooks or documents.  Avakyan Dep. 70:13-16.

69. Drivers that choose to perform services for NYC receive commissions for those services, but still have to pay rent for any vehicle they rent or lease from JND according to the agreement between the driver and JND, which ranges from about $300.00 to $350.00 per week.  Avakyan Dep. 40:2-12.

70. Drivers that perform services for NYC are not required to rent a vehicle from JND; in fact, most drivers that perform services for NYC use their own vehicle and do not rent from JND.  Avakyan Dep. 57:13-16, 60:10-14, 60:21-61:18.

71. NYC does not train drivers on how, when, or where to perform their driving services.  Avakyan Aff. ¶ X.

72. NYC does not train drivers on how to get around the New York City area.  Avakyan Aff. ¶ X.

73. Drivers who perform services for NYC receive eighty percent (80%) of the total fares collected, while NYC receives the remaining twenty percent (20%).  Avakyan Dep. 55:25-56:18; D12-D26.

74. Avakyan verbally informs drivers how they are compensated, that rates change depending on the time of day, and that the driver has the right to reject the fare.  Avakyan Dep. 45:12-23, 56:19-21.

75. NYC does not pay drivers on an hourly basis. Avakyan Dep. 56:22-24.

76. The number of available drivers for NYC varies by day. Avakyan Dep. 42:3-13.

77. The way fares are offered to drivers is similar to Uber in that Uber reaches out to the driver, and the driver then knows where the pick-up is, where the destination is, and how much it costs before accepting or rejecting the fare. Avakyan Dep. 45:24-46:4.

78. Drivers are notified of jobs on an "app" available on smart phone devices, which can be downloaded to their phone, where they may see available jobs and respond as to the availability of those jobs. Avakyan Dep. 48:8-13, 52:16-53:4.

79. The name of the smart phone application is Etrans, which is available on the Google Play Store for Android devices. Avakyan Dep. 48:14-19.

80. Drivers see their fares before accepting or rejecting a fare. Avakyan Dep. 161:21-162:2.

81. To signal their willingness and ability to perform services, drivers that perform services for NYC "log in" or "book into" the Etrans application. Avakyan Aff. ¶ X.

82. Logging into the Etrans application involves turning on a smart phone application. Avakyan Aff. ¶ X.

83. Drivers that perform services are never required to book into the Etrans application. Avakyan Aff. ¶ X.

84. Drivers that perform services for NYC can engage in any activity (personal or otherwise) while booked into the Etrans application and waiting for fare offers from NYC. Avakyan Aff. ¶ X.

85. Some drivers that perform services for NYC pick up street hails while booked into the Etrans application and waiting for fare offers from NYC. Avakyan Aff. ¶ X.

9

86. By turning on the Etrans application, a driver that performs services for NYC is able to see what fares are available to be performed.  Avakyan Aff. ¶ X.

87. Typically, at the end of the day, only one fare is available for the next day on the Etrans app as subsequent fares are offered "live" through the app on the following day.  Avakyan Dep. 53:5-21.

88. On a real time basis, NYC's dispatch computer system automatically scans a data field containing a listing of drivers who are booked in to the Etrans application and queued up to accept rides.  Avakyan Aff. ¶ X.

89. If there are no drivers booked in to the Etrans application, NYC rejects the fare.  Avakyan Aff. ¶ X.

90. Once booked into the Etrans application, drivers that perform services for NYC receive fare offers from NYC's dispatch system.  Avakyan Aff. ¶ X.

91. Typically, the fare offers are given out on a "first come first serve" basis.  Avakyan Aff. ¶ X.

92. Drivers who receive fare offers choose whether to accept or reject the offer.  Avakyan Aff. ¶ X.

93. If a driver rejects a fare offer, it is offered to the next driver booked in to the Etrans application.  Avakyan Aff. ¶ X.

94. Drivers are free to perform services for NYC on any days they wish and during any hours they wish, and did not need Avakyan's approval to do so.  Avakyan Dep. 54:10-18.

95. Drivers who perform services for NYC are free to (and do) choose how many fares to accept from NYC each day, week, month, and year.  Avakyan Aff. ¶ X.

96. Drivers who perform services for NYC have the right to reject offers.  Avakyan Aff. ¶ X.

10

97. Drivers who perform services for NYC exercise their right to reject job offers.  Avakyan Aff. ¶ X.

98. NYC pays its drivers on a 1099 basis and considers them to be independent contractors. Avakyan Dep. 52:7-12.

99. NYC does not exert control over its drivers.  Avakyan Dep. 52:13-15.

100. NYC does not test its drivers' driving skills.  Avakyan Dep. 188:18-23.

101. There were many times in 2016 when a driver was not available for a fare.  Avakyan Dep. 116:7-10.

102. There have been times when there was no available driver to replace an unavailable driver, in which case Avakyan would reject the fare by contacting the NYSDOH (by phone or e-mail) and another company would handle the fare.  Avakyan Dep. 116:13-117:3, 117:6-9.

**Plaintiff Batir Nazarov**

103. Nazarov is in the business of providing driving services.  Kataev Decl. ¶ X, Ex. B at Request No. 1.

104. Nazarov began performing services for NYC Wheels Car Service Inc. in August 2016.  Avakyan Dep. 65:19-21, 72:12-15.

105. Prior to performing services for NYC, Nazarov signed a contract with JND to rent a vehicle.  Avakyan Dep. 72:20-22, 73:4-6.

106. Though Nazarov had a Honda Odyssey, he could not drive that car because it did not have TLC plates, a requirement by the TLC in order to drive a for-hire vehicle.  Nazarov Dep.[4] 55:12-25.

---

[4] All references to "Nazarov Dep." refer to the deposition transcript of Batir Nazarov, the excerpted portions of which are annexed to the Declaration of Emanuel Kataev, Esq. in Support.  See Kataev Decl. ¶ X, Ex. F.

107. Nazarov could have used his own vehicle so long as it met TLC requirements. Nazarov Dep. 73:11-19.

108. Nazarov obtained his driver's license on October 9, 2015, before he began performing services for NYC. Nazarov Dep. 29:24-30:14.

109. Nazarov began the process of getting his TLC license in 2016, before he began performing services for NYC. Nazarov Dep. 24:23-25:4, 51:18-52:9.

110. Nazarov had to take driver education courses to obtain his TLC license. Nazarov Dep. 27:8-21, 52:14-19.

111. Nazarov obtained a license from the TLC as a "for-hire vehicle" driver. Kataev Decl. ¶ X, Ex. A at Interrogatory No. 23; P20.

112. When Avakyan first met with Nazarov, Avakyan provided Nazarov with an agreement, explained to Nazarov what was written in the agreement, gave him the original agreement and informed him of the details in the agreement, i.e., that Nazarov will pay weekly rent for the vehicle, that he may use the vehicle however he wanted, that he had the option of engaging with NYC for an eighty percent (80%) commission payable to him after rent was deducted, and that he would be responsible for just the rent if he did not wish to engage with NYC. Avakyan Dep. 74:13-75:3, 75:24-76:2.

113. Avakyan reviewed the agreement with Nazarov, explaining it in both English and Russian, and Nazarov nodded or said "Yes. I understand. I understand." Avakyan Dep. 76:3-7, 76:8-15.

114. Nazarov signed the agreement on August 2, 2016. Avakyan Dep. 76:24-77:21, 86:20-22; D8-D9.

115. The agreement provides for a weekly rent of $325.00 and that any changes in price must be discussed and agreed between owner and lessor and must be discussed at the signing as well. Avakyan Dep. 87:11-15; D8-D9.

116. The eleventh clause of the agreement provides that the weekly rent of the vehicle is deducted from the weekly book of the lessor if the lessor performed services for NYC. Avakyan Dep. 96:6-10, 96:18-20; D8-D9.

117. The agreement provides that the lessor must pay the weekly rent for the vehicle if the lessor worked for any other bases. Avakyan Dep. 96:11-17; D8-D9.

118. Nazarov was free to use the vehicle during the time he rented it from JND as he saw fit, and was permitted to (and did) take the car home with him. Avakyan Dep. 78:10-14, 99:24-100:5; Nazarov Dep. 74:21-75:9a.

119. Nazarov earned eighty percent (80%) of the fares he performed on a weekly basis, while NYC retained twenty percent (20%). Avakyan Dep. 66:4-10; Nazarov Dep. 192:12-194:11, 194:13-196:12; D12-D26; D76-D80.

120. Nazarov paid a weekly rent of $350.00 to rent the vehicle. Kataev Decl. ¶ X, Ex. A at Interrogatory No. 17.

121. There were no requirements for Nazarov to begin performing services at NYC other than him holding a driver's license and TLC license as required by the TLC. Nazarov Dep. 85:11-16.

122. Nazarov was not required to wear a uniform or any clothing bearing any NYC logos. Kataev Decl. ¶ X, Ex. B at Request Nos. 70-71.

123. Nazarov is aware that as a TLC license holder, he has to comply with the TLC rules and regulations and understands that, to the extent that NYC enforces any of those rules and regulations, it is only because TLC requires them to. Nazarov Dep. 93:11-20, 94:7-12, 138:6-19. 147:19-148:3; Kataev Decl. ¶ X, Ex. B at Request Nos. 79 and 129.

124. Nazarov was not provided any training by NYC regarding how to operate vehicles, how to drive, or any other matter concerning the performance of driving services for NYC other than brief training on how to use NYC's booking software. Nazarov Dep. 93:23-94:6, 94:13-18; Kataev Decl. ¶ X, Ex. B at Request Nos. 76-78.

125. Nazarov was not tested by NYC regarding his driving skills. Kataev Decl. ¶ X, Ex. B at Request No. 74.

126. Nazarov had driving experience prior to providing services to NYC. Kataev Decl. ¶ X, Ex. B at Request No. 75.

127. Nazarov was paid on a 1099 basis. Avakyan Dep. 161:7-8; Nazarov Dep. 216:21-217:10; P41; Kataev Decl. ¶ X, Ex. B at Request No. 114.

128. Nazarov was never an employee of NYC. Avakyan Dep. 72:16-17.

129. Nazarov never received any employment benefits from NYC. Kataev Decl. ¶ X, Ex. B at Request Nos. 123-124.

130. Nazarov did not have any set hours while performing services for NYC. Avakyan Dep. 84:14-17.

131. Nazarov did not have to work any set days while performing services for NYC. Avakyan Dep. 84:18-19.

132. Nazarov was not required to drive on any day, and was not required to ask permission to take off certain days. Avakyan Dep. 114:18-23.

133.    Nazarov had the right to just not show up on any given day.  Avakyan Dep. 114:24-115:2.

134.    Nazarov had the right to refuse any jobs on any given day.  Avakyan Dep. 150:25-151:3.

135.    Nazarov had the right to reject any fare made available to him, though he was not incentivized to reject fares unless he found a fare independently because he made money for each fare he took.  Avakyan Dep. 174:10-20; Nazarov Dep. 136:12-137:5.

136.    For instance, though Nazarov initially chose to perform services for NYC as early as 4:00 AM or 5:00 AM sometimes (about once a week or once a month), he ultimately refused to accept those fares because it involved him getting up too early in the morning.  Nazarov Dep. 103:4-13, 136:4-11.

137.    Nazarov rejected fares by calling Avakyan and telling him not to give him certain fares.  Nazarov Dep. 103:14-25.

138.    Nazarov did not perform services for NYC on several occasions because he had to deal with problems with his landlord several times, as reflected in the trip logs where there are large gaps in time in which Nazarov did not perform any fares.  Avakyan Dep. 175:10-178:19; D12-D26.

139.    Nazarov performed services for NYC whenever he wanted at his discretion.  Avakyan Dep. 178:14-23.

140.    Nazarov was free to perform services for NYC at his own convenience.  Avakyan Dep. 184:25-185:3.

141.    There was no schedule for Nazarov set by NYC.  Avakyan Dep. 185:4-6.

15

142. Nazarov's schedule, which he determined on his own, varied. Nazarov Dep. 104:18-19, 105:5-11

143. Nazarov was free to choose: (i) when to accept fares from the Etrans application; (ii) how often he would book into the Etrans application; and (iii) the days and hours he provided driving services for NYC. Avakyan Dep. 185:7-17; Nazarov Dep. 79:7-80:23.

144. Nazarov did not have a compatible phone with the Etrans application at the time he commenced performing services for NYC Wheels Car Service Inc. which was why he was given a tablet. Nazarov Dep. 58:5-21.

145. Nazarov acknowledges that every fare he performed for NYC Wheels Car Service Inc. was done through the Etrans application. Nazarov Dep. 126:24-127:9.

146. Nazarov was free to, and did, reject fares provided by NYC. Avakyan Dep. 185:18-186:4.

147. Nazarov was never penalized for rejecting any jobs or fares. Avakyan Dep. 186:5-7.

148. Nazarov was not required to attend any meetings with anyone from NYC. Avakyan Dep. 140:15-19.

149. Nazarov was not instructed as to what type of gas to place in the vehicle he rented, nor as to where to get gasoline. Avakyan Dep. 100:6-10; Kataev Decl. ¶ X, Ex. B at Request No. 103.

150. NYC did not supervise Nazarov's work. Avakyan Dep. 190:13-15.

151. Nazarov was never disciplined in any way, shape, or form. Avakyan Dep. 194:4-6.

152. Nazarov could have worked elsewhere while performing services for NYC. Nazarov Dep. 105:15-108:13, 108:17-109:2.

153. Nazarov performed services for NYC as a driver from August 2016 through November 2016, a period of four (4) months. Avakyan Dep. 79:2-5.

154. Nazarov typically communicated with NYC through the tablet by responding to fares or otherwise by calling Avakyan to inform him that he was done driving for the day. Avakyan Dep. 128:4-7.

155. Avakyan totaled the fares performed by Nazarov on a weekly basis and deducted twenty percent (20%) of same as NYC's fee plus the rent to JND. Avakyan Dep. 159:16-160:7, 165:12-15.

156. Nazarov was paid for his services to NYC on a weekly basis. Avakyan Dep. 161:9-12.

157. Nazarov registered his business name Batir as a "dba" or "doing business as" name. Nazarov Dep. 120:18-121:15.

158. Nazarov was at risk of incurring losses while performing services for NYC. Nazarov Dep. 111:8-15, 150:23-151:22.

159. Nazarov incurred expenses while performing services for NYC. Nazarov Dep. 111:16-112:18, 144:6-145:6, 146:22-147:3, 181:13-21; P3-P4,[5] P8-P9, P12-P13, P16, P18-P19; Kataev Decl. ¶ X, Ex. B at Request Nos. 95-96.

160. For instance, Nazarov purchased his own Garmin GPS to perform services for NYC. Nazarov Dep. 130:25-131:25.

---

[5] All references to "P#" or "P##" refer to documents produced by Plaintiff in the course of discovery, the excerpted portions of which are annexed to the Declaration of Emanuel Kataev, Esq. in Support. See Kataev Decl. ¶ X, Ex. C.

161. Nazarov was not forbidden from offering driving services to any individuals he transported or anyone outside of NYC. Nazarov Dep. 115:4-23.

162. Nazarov could cease performing services at any time. Nazarov Dep. 127:20-25.

163. Nazarov did not receive any instruction from NYC about the performance of his duties as a driver. Nazarov Dep. 128:7-10.

164. Nazarov decided how to perform his services. Nazarov Dep. 128:15-20.

165. Nazarov determined what route he wanted to take to get to the destination, whether he used a GPS or knew the roads. Nazarov Dep. 128:21-129:21, 130:9-12, 130:13-24.

166. Nazarov did not provide anyone at NYC a status update while he performed driving services and was not required to do so. Nazarov Dep. 137:14-138:5.

167. Nazarov ceased performing services for NYC when Avakyan informed Nazarov of several unpaid violations pertaining to his vehicle, which Nazarov was obligated to pay according to his contract with JND, and Nazarov came to Avakyan's office, knocked down computers, and tried to fight Avakyan, at which time Avakyan called the police and Nazarov subsequently fled, such that the police did not make a report because he was not present at the scene. Avakyan Dep. 79:6-24, 80:8-21, 105:19-106:17; Nazarov Dep. 153:6-154:13.

168. Nazarov never drove outside of the State of New York and did not engage in any interstate commerce. Nazarov Dep. 135:17-136:3; Kataev Decl. ¶ X, Ex. A at Interrogatory Nos. 12 and 15.

169. Nazarov did not transport any products. Kataev Decl. ¶ X, Ex. A at Interrogatory No. 16.

170. Nazarov does not know how many hours he spent performing services for NYC. Nazarov Dep. 59:23-60:5, 60:22-61:7.

171.    No deductions were taken out of Nazarov's weekly payments from NYC for taxes. Nazarov Dep. 116:19-22.

172.    NYC never provided Nazarov with a W2 form. Nazarov Dep. 116:23-117:12.

173.    Nazarov currently considers himself self-employed because he performs services for Uber. Nazarov Dep. 118:20-25.

174.    Nazarov performed services for NYC using an application, just like he does with Uber. Nazarov Dep. 119:2-5.

175.    Nazarov has the ability to accept or reject ride offers using Uber, just like he had with NYC Wheels Car Service Inc. Nazarov Dep. 119:6-25.

176.    Nazarov performed driving services for NYC just like he did with Uber. Nazarov Dep. 120:2-7.

177.    Nazarov is required to have a TLC license to perform services for Uber just like he was required to do with NYC Wheels Car Service Inc. Nazarov Dep. 120:8-17.

178.    When he performed services for NYC, Nazarov was responsible for filing his own income tax return in connection with his earnings. Kataev Decl. ¶ X, Ex. B at Request No. 115.

179.    When he performed services for NYC, Nazarov classified himself as an independent contractor, claimed deductions for business purposes associated with his independent contractor status, and declared under penalty of perjury that he was an independent contractor on his federal and state tax returns. P29-P46.

180.    Nazarov filed his taxes as a sole proprietor, and submitted a Schedule C form titled Profit or Loss from Business with his tax return. Nazarov Dep. 210:3-17; P37.

181.    When he performed services for NYC, Nazarov received $20,017.00 in gross receipts and itemized all of his expenses on his tax return, including $836.00 for machinery and equipment (repairs to his vehicle), and $13,874.00 in other expenses, totaling $20,204.00 in expenses, for a net loss of $187.00 in 2016 from his driving business. Nazarov Dep. 210:18-212:22; P37.

182.    The $13,874.00 in "other expenses" consists of cellular phone, internet, rental car (totaling $9,840.00), gas, and car wash. Nazarov Dep. 212:23-213:14; P37.

183.    Nazarov reported all income earned from Defendants to federal, state, and local taxing authorities. Kataev Decl. ¶ X, Ex. A at Interrogatory No. 9.

184.    Nazarov signed his taxes under penalty of perjury. Nazarov Dep. 242:8-244:2; P29-P46.

Dated: Lake Success, New York
      December 8, 2017                **MILMAN LABUDA LAW GROUP PLLC**

                                              /s
                                      Emanuel Kataev, Esq.
                                      3000 Marcus Avenue, Suite 3W8
                                      Lake Success, NY 11042-1073
                                      (516) 328-8899 (office)
                                      (516) 303-1395 (direct dial)
                                      (516) 328-0082 (facsimile)
                                      emanuel@mllaborlaw.com

cc:  Alex Umansky, Esq. (via ECF)